**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

JUSTIN BARKLEY; AL FATA; BRIAN
PHILLIPS; and JERRY J. WALSH,
individually and on behalf of all others
similarly situated,

    Plaintiffs,

v.               Case No. 6:14-cv-376-Orl-37DAB

PIZZA HUT OF AMERICA, INC.; and
YUM! BRANDS, INC.,

    Defendants.

# ORDER

This cause is before the Court on the following:

1. Plaintiff Al Fata's Motion to Compel Class Arbitration (Doc. 23), filed May 18, 2014;

2. Defendants' Motion to Compel Individual Arbitration and Dismiss or Stay Proceedings, and Supporting Memorandum of Law (Doc. 27), filed May 19, 2014;

3. Defendants' Opposition to Plaintiff Al Fata's Motion to Compel Arbitration (Doc. 48), filed June 16, 2014; and

4. Plaintiffs' Opposition to Defendants' Motion to Compel Individual Arbitration (Doc. 50), filed June 16, 2014.

Upon consideration, the Court finds that both motions are due to be denied without prejudice.

**BACKGROUND**

In this Florida Minimum Wage Act ("FMWA") dispute, Plaintiffs, on behalf of a purported class of pizza delivery drivers, filed suit against their employer, Defendant Pizza Hut of America, Inc., and its parent company, Defendant Yum! Brands, Inc. (Doc. 1.) Though this case is fairly new, the history between the parties is protracted, and the Court will set it out in brief as it is relevant to the instant motions.

In 2011, a class of pizza delivery drivers brought an FMWA claim in state court in Brevard County against CFL Pizza, a Pizza Hut franchisee.[1] (Doc. 23, p. 5.) That action settled in part, but the state court judge dismissed the claims against CFL Pizza for the time period prior to its purchase of the franchise stores, indicating that those claims would have to be pursued against Pizza Hut itself. (*Id.*)

Accordingly, in 2012, two members of that settlement class filed an FMWA claim against Pizza Hut in state court in Hillsborough County, seeking to represent a class of delivery drivers. *See Hanna v. Pizza Hut of Am., Inc.*, No. 8:12-cv-1863-T-23EAJ, Doc. 2, ¶ 61 (M.D. Fla. Aug. 16, 2012). The case was removed to federal court and assigned to U.S. District Judge Steven D. Merryday. *See id.*, Doc. 1. Pizza Hut moved to compel arbitration, noting that both of the representative plaintiffs had signed arbitration agreements. *Id.*, Doc. 5. In addition to asking the court to find that there were valid agreements and arbitrable issues, Pizza Hut also sought a ruling that individual arbitration—as opposed to class arbitration—was appropriate. *Id.* Then, presumably to cut Pizza Hut off at the pass, the plaintiffs submitted the action to arbitration. *See id.*,

---

[1] That suit was *Hanna v. CFL Pizza, LLC*, No. 05-2011-CA-52949 (Fla. Cir. Ct. 2011). (Doc. 1, ¶ 16.)

Doc. 9. The plaintiffs submitted to Judge Merryday that the motion to compel arbitration was therefore moot and that the question of individual versus class arbitration was one for the arbitrator, not the court. *Id.* Judge Merryday denied the motion as moot to the extent that it sought arbitration; further, he denied the motion outright to the extent that it sought a ruling on individual versus class arbitration, finding that "[t]he arbitrator must decide whether the arbitration agreement permits class arbitration." *Id.*, Doc. 11 (citing *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452–53 (2003) (plurality op.)). Judge Merryday also stayed the case until the conclusion of the arbitration. *Id.* That case remains pending, though stayed. *See id.*

The parties then proceeded with arbitration. (Doc. 28.) In a thorough opinion, the arbitrator reviewed the arbitration provision and concluded that the agreement did not permit class arbitration. (Doc. 28-5, p. 1.) Most of the members of the class then went to individual arbitration proceedings, which are ongoing. (Doc. 27, p. 5.) However, Pizza Hut could not locate signed arbitration agreements for four of the class members. (*Id.*) Thus, those individuals—Plaintiffs Justin Barkley, Al Fata, Brian Phillips, and Jerry Walsh—filed the instant Complaint as representatives of a class virtually identical to the one in Judge Merryday's case. (*See* Doc. 1.) They acknowledged the prior litigation but submitted that they "are not covered" by arbitration agreements. (*Id.* ¶ 18.)

Defendants subsequently located a signed arbitration agreement for Plaintiff Fata. (Doc. 24-7, p. 5.) The arbitration provision is identical in all material respects to the one examined by the arbitrator in Judge Merryday's case. (*Compare id. with* Doc. 28-1, p. 3.) However, Defendants have not produced signed arbitration agreements for Plaintiffs Barkley, Phillips, and Walsh. (Doc. 27, ¶¶ 25–26.) Defendants represent that they are

3

conducting a "diligent search" for the agreements, but they contend that regardless of their failure to produce the documents, Plaintiffs must have signed the agreements as required by Pizza Hut policy. (*Id.* ¶¶ 18–26.) Plaintiffs, of course, counter that Defendants have failed to produce the documents because they do not exist. (Doc. 50.)

Faced with his signed agreement, Plaintiff Fata now moves to compel class arbitration.[2] (Doc. 23.) Contrary to the position taken by the plaintiffs in Judge Merryday's case, Plaintiff Fata argues that the question of individual or class arbitration is one for the Court, not the arbitrator.[3] (*Id.* at 12.) Defendants oppose. (Doc. 48.) Further, Defendants themselves also move to compel individual arbitration as to all Plaintiffs, even those for whom Defendants have not located signed arbitration agreements. (Doc. 27.) Plaintiffs oppose. (Doc. 50.) These matters are now ripe for the Court's adjudication.

## STANDARDS

"[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). A court therefore may only order parties to arbitration when it is "satisfied that the making of the agreement for arbitration . . . is not in issue." 9 U.S.C. § 4.

## DISCUSSION

**I.    Fata**

As an initial matter, when Plaintiffs filed this action, they distinguished themselves from the plaintiffs in Judge Merryday's case by alleging that they were not covered by

---

[2] Plaintiffs Barkley, Phillips, and Walsh did not join the motion. (Doc. 23, p. 7 n.1.)
[3] Plaintiffs in this action are represented by two of the same attorneys who represent the plaintiffs in Judge Merryday's case.

4

arbitration agreements. (Doc. 1, ¶ 18.) Though that remains true at present for Plaintiffs Barkley, Phillips, and Walsh, it is no longer the case for Plaintiff Fata, who concedes that he is subject to the same arbitration agreement at issue in Judge Merryday's case. (*See* Doc. 23, p. 9.) Further, there is no question that Plaintiff Fata is part of the purported class in Judge Merryday's case, a class defined virtually identically to the instant one. (*Compare* Doc. 1, ¶ 64, *with Hanna*, No. 8:12-cv-1863, Doc. 2, ¶ 61.) Thus, Plaintiff Fata's claim is essentially duplicative of the representative plaintiffs' claims in Judge Merryday's case.

"The first-filed rule provides that when parties have instituted competing or parallel litigation in separate courts, the court initially seized of the controversy should hear the case." *Collegiate Licensing Co. v. Am. Cas. Co. of Reading*, 713 F.3d 71, 78 (11th Cir. 2013). The first-filed rule should be used to "avoid[] multiplicitous proceedings and potentially conflicting judgments," which is appropriate to prevent "fragment[ing] a case about a single arbitration award into two suits." *Southern Mills, Inc. v. Nunes*, No. 13-11921, 2014 WL 2777279, at *3 (11th Cir. Mar. 27, 2014). Thus, the first-filed rule mandates that, as a matter of judicial economy and consistency, Plaintiff Fata's claim must be transferred for consideration with the identical claim currently pending before Judge Merryday.[4]

## II.    Barkley, Phillips & Walsh

Turning now to the remaining Plaintiffs, Defendants argue that they should be compelled to arbitrate even though Defendants cannot locate signed arbitration

---

[4] Though the case is stayed due to the arbitration order, it remains a live controversy. *See Hanna*, No. 8:12-cv-1863, Doc. 11. Presumably, Plaintiff Fata will be ordered to arbitrate alongside the other purported class members, as he does not contest the applicability of the arbitration agreement.

agreements. (Doc. 27, pp. 16–20.) In support of this contention, Defendants submit a declaration by Keith McDonald, Plaintiff Barkley's hiring manager, and a declaration by Erika Burkhardt, a lawyer for Pizza Hut, which both generally aver that it was Pizza Hut policy for Plaintiffs to sign the arbitration agreements and that they must have therefore done so. (Docs. 29-1, 29-2.)

Defendants devote a great deal of argument to the proposition that Plaintiffs "bear the burden to create a genuine issue as to the existence of an arbitration agreement." (Doc. 27, p. 18 (citing *Chastain v. Robinson-Humphrey Co.*, 957 F.2d 851, 854 (11th Cir. 1992)).) This contention is a slight distortion of the thrust of the case law. A defendant bears the initial burden to make out a *prima facie* case that there is a written agreement at all to bring the case within the purview of the Federal Arbitration Act.[5] *See Corbin v. Affiliated Computer Servs., Inc.*, No. 6:13-cv-180-Orl-36TBS, 2013 WL 3804862, at *3 (M.D. Fla. July 19, 2013) (Honeywell, J.); *Newman v. Hooters of Am., Inc.*, No. 8:06-CIV-364-EAK-TGW, 2006 WL 1793541, at *2 (M.D. Fla. June 28, 2006) (Kovachevich, J.); *see also In re Wiand*, No. 8:10-cv-71-T-17MAP, 2011 WL 4532070, at *5 (M.D. Fla. June 8, 2011) (Pizzo, M.J.). Then the burden shifts to the plaintiff to show that even though there was some written contract, he did not actually agree to it—because the signature was forged, the terms of the contract were misrepresented, or some other

---

[5] Indeed, even in *Chastain* and the major case on which *Chastain* relies, *T&R Enterprises, Inc. v. Continental Grain Co.*, 613 F.2d 1272 (5th Cir. 1980), there was no dispute that there was actually a written document; rather, the dispute was over whether the document evidenced the plaintiff's agreement to arbitrate, which the plaintiff then naturally had to substantiate. *See Chastain*, 957 F.2d at 853; *T&R*, 613 F.2d at 1273–74. Thus, *Chastain* and the other cases on which Defendants rely are inapposite because they all involve plaintiffs' proffered reasons why an existing contract did not show their agreement to arbitrate.

reason evincing lack of true agreement. *See, e.g.*, *Chastain*, 957 F.2d at 855; *Concanon v. Smith Barney, Harris, Upham & Co.*, 805 F.2d 998, 1000–01 (11th Cir. 1986).

Here, the Court need not proceed to the second step of the analysis because it is thoroughly unconvinced that Defendants have even demonstrated the existence of an agreement in order to shift the burden to Plaintiffs. Neither Burkhardt's nor McDonald's declaration persuades the Court otherwise. Burkhardt's declaration merely states that it was Pizza Hut policy for employees to sign the agreement, but she has no personal knowledge that Plaintiffs Barkley, Phillips, or Walsh actually signed or ever even saw such an agreement. (*See* Doc. 29-1.) McDonald's declaration is more concrete, as he was Plaintiff Barkley's manager, but even he does not have a specific recollection of Plaintiff Barkley signing the agreement. (Doc. 29-2, ¶¶ 8, 14.) While McDonald also attests that Pizza Hut conducted audits of his employee's personnel files and submits that they "were always 100% compliant" and "complete" (*id.* ¶ 17), this averment is severely undercut by the fact that Pizza Hut now cannot find Plaintiff Barkley's allegedly signed agreement.

In short, Defendants have not made out a *prima facie* case that Plaintiffs Barkley, Phillips, and Walsh agreed to arbitrate, and the burden does not shift to Plaintiffs to substantiate their denial under *Chastain*. *See Newman*, 2006 WL 1793541, at *2 (rejecting an identical argument based on company policy and noting that "[t]his Court will not rely on 'if, then' scenarios and reverse factual inferences to establish the existence of a contract"); *Turner v. U-Haul Co. of Fla. 905*, No. 6:09-cv-118-Orl-28DAB, 2008 WL 709107, at *2 (M.D. Fla. Mar. 14, 2008) (Baker, M.J.) ("[T]here is no evidence of the one thing that is absolutely crucial to a motion to compel arbitration under either state or federal law: *a written agreement to arbitrate*."). The Court simply will not order Plaintiffs

7

to arbitrate when there is essentially zero evidence that they ever even saw, let alone assented to, an arbitration agreement. The motion is therefore due to be denied. If Defendants do locate the alleged documents or if they have other sufficient evidence demonstrating that Plaintiffs actually signed or otherwise assented to[6] such agreements, they may renew their motion.

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Plaintiff Al Fata's Motion to Compel Class Arbitration (Doc. 23) is **DENIED WITHOUT PREJUDICE** to reasserting it before Judge Merryday.

2. Defendants' Motion to Compel Individual Arbitration and Dismiss or Stay Proceedings, and Supporting Memorandum of Law (Doc. 27) is **DENIED WITHOUT PREJUDICE**.

   a. To the extent that it seeks to arbitrate Plaintiff Fata's claim, the motion is **DENIED WITHOUT PREJUDICE** to reasserting it before Judge Merryday.

   b. To the extent that it seeks to arbitrate Plaintiff Barkley's, Plaintiff Phillips', and Plaintiff Walsh's claims, the motion is **DENIED WITHOUT PREJUDICE** to reasserting it before this Court if Defendants locate the requisite evidence of a written agreement.

3. Plaintiff Fata's claim is **SEVERED** from this case pursuant to Federal Rule of Civil Procedure 21.

---

[6] A signature is not necessarily required, but there must be some showing of assent. *See Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1369 (11th Cir. 2005).

4. Plaintiff Fata's claim is **TRANSFERRED** to the U.S. District Court for the Middle District of Florida, Tampa Division, for consideration by Judge Merryday along with *Hanna v. Pizza Hut of America, Inc.*, No. 8:12-cv-1863-T-23EAJ.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on August 8, 2014.

ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record

U.S. District Judge Steven D. Merryday

Clerk's Office, U.S. District Court for the Middle District of Florida, Tampa Division